IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BOE W. ADAMS,

                        Petitioner,

            v.                          CASE NO. 21-3226-SAC

JEFF BUTLER,

                        Respondent.


<u>MEMORANDUM AND ORDER</u>


     This matter comes before the Court on Respondent's Motion to
Dismiss (Doc. 13) this matter as time-barred. For the reasons
explained below, the Court will grant the motion and dismiss the
action as time-barred.

### Background

     The State of Kansas charged Petitioner in Sedgwick County
District Court with premeditated first-degree murder, aggravated
robbery, felony theft, forgery, and misdemeanor theft. *State v.
Adams*, 311 Kan. 569, 570 (2020). Early in the proceedings,
Petitioner requested to proceed pro se and the district court
granted the request. *Id.* at 570-71. In accordance with a plea
agreement he negotiated, Petitioner ultimately pled guilty as
charged. *Id.* at 571-72. Before sentencing, the district court
granted Petitioner's request and reappointed the attorney who
represented Petitioner before he proceeded pro se. *Id.* at 572. The
district court sentenced Petitioner in accordance with the plea
agreement to life without the possibility of parole for 50 years,
also known as "a hard 50." (Doc. 1.)

Petitioner timely pursued a direct appeal of his sentence, during which he filed in the district court a motion to withdraw his plea; the district court denied the motion due to the ongoing appeal. *Adams*, 311 Kan. at 572; see also *State v. Adams*, Case No. 118,476, online records of the Kansas appellate courts. On July 26, 2018, the Kansas Supreme Court (KSC) affirmed Petitioner's sentence by issuing a dispositional order.

The following month, Petitioner timely filed a motion under K.S.A. 60-1507 and a second motion to withdraw his plea. *Adams*, 311 Kan. at 572. He argued that his plea was involuntary because, at the time he entered it, he was suffering from paranoid schizophrenia and was not medicated. *Id.* Petitioner asserted that during the time he represented himself, he acted irrationally and he heard voices telling him what to do. *Id.* He also argued that counsel was ineffective for failing to raise the issue of his mental health and have him evaluated. *Id.*

The district court appointed new counsel and held a non-evidentiary hearing on the motions, after which the district judge—who had also presided over Petitioner's criminal proceedings—denied both motions. *Id.* at 573. Petitioner appealed and, on June 12, 2020, the Kansas Supreme Court (KSC) issued an opinion affirming the denial. *Id.* at 570.

Petitioner filed his petition in this matter by mailing it on August 4, 2021. (Doc. 1-2.) *See United States v. Hopkins*, 920 F.3d 690, 696 n. 8 (10th Cir. 2019) ("Because [petitioner] was a prisoner and filed his motion pro se, he may rely on the 'prison mailbox rule,' which makes the date on which he presented his motion to prison officials for mailing the filing date for timeliness

purposes."). In his § 2254 petition, Petitioner asserts two grounds for relief, both of which the KSC resolved against him.

The Court conducted an initial screening of the petition as required by Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts and, on September 20, 2021, the Court directed Respondent to show cause why the writ should not be granted. (Doc. 3.) Respondent sought and the Court granted three extensions of time to file the answer and return. (Docs. 5, 6, 7, 8, 9, 10.) On February 15, 2022, Respondent filed a motion to dismiss, arguing that this matter was untimely filed. (Doc. 13.) Petitioner filed his response to the motion, a motion to amend his petition and appoint counsel on February 23, 2022. (Docs. 15, 16.) The following day, Petitioner filed a supplement to his response to the motion to dismiss and a separate motion to appoint counsel. (Docs. 17, 18.) Respondent filed his reply to the response on March 8, 2022. (Doc. 19.) The Court has carefully reviewed the parties' filings and will first address Petitioner's pending requests for appointment of counsel.

### Requests for Appointed Counsel

Also pending before the Court are Petitioner's motion to amend petition and appoint counsel (Doc. 15) and a separate motion in which he seeks appointed counsel (Doc. 18). Petitioner's requests for appointment of counsel rest on his assertions that he lacks access to legal materials and case law (Doc. 15) and that he "[n]eed[s] an attorney" (Doc. 18). The Court has carefully considered Petitioner's requests for counsel and, in particular, considered whether Petitioner's mental health or the complexity of the relevant arguments requires counsel.

As the Court has previously informed Petitioner, he has no constitutional right to counsel in a federal habeas corpus action. (See Doc. 4); *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Petitioner bears the burden to convince the Court that appointment of counsel is warranted. *Steffey v. Orman*, 451 F.3d 1218, 1223 (10th Cir. 2006). And, as the Court has also already informed Petitioner, it is not enough to assert that appointing counsel will help present the 'strongest possible case, [as] the same could be said in any case." *Id.* Rather, when deciding whether to appoint counsel, the Court must consider "the merits of a prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004).

The limited issue before the Court at this time is the timeliness of this action. The Court finds that Petitioner has ably presented his arguments regarding timeliness of this action. After carefully considering those arguments, the Court concludes that the appointment of counsel would not assist the Court in resolving the relatively straightforward question of whether this matter is timely, nor is counsel necessary to investigate facts relevant to timeliness. Thus, the requests for appointment of counsel are denied. The Court now turns to the question of timeliness.

### Timeliness Standards

This action is subject to the one-year limitation period established by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") in 28 U.S.C. § 2244(d). Section 2244(d)(1) provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in

custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to case on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

The one-year limitation period generally runs from the date the judgment becomes "final," as provided by § 2244(d)(1)(A). *See Preston v. Gibson*, 234 F.3d 1118, 1120 (10th Cir. 2000). Under Supreme Court law, "direct review" concludes when the availability of direct appeal to the state courts and request for review to the Supreme Court have been exhausted. *Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009). The Rules of the United States Supreme Court allow ninety days from the date of the conclusion of direct appeal to seek certiorari. Sup. Ct. R. 13(1). "[I]f a prisoner does not file a petition for writ of certiorari with the United States Supreme Court after [her] direct appeal, the one-year limitation period begins to run when the time for filing certiorari petition expires." *United States v. Hurst*, 322 F.3d 1259 (10th Cir. 2003). The limitation period begins to run the day after a conviction becomes

final. See *Harris v. Dinwiddie*, 642 F.3d 902-07 n.6 (10th Cir. 2011).

The statute also contains a tolling provision: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

The one-year limitation period also is subject to equitable tolling "in rare and exceptional circumstances." *Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000) (citation omitted). This remedy is available only "when an inmate diligently pursues his claims and demonstrates that he failure to timely file was caused by extraordinary circumstances beyond his control." *Marsh v. Soares*, 223 F.3d 127, 1220 (10th Cir. 2000). Such circumstances include, for example, "when an adversary's conduct—or other uncontrollable circumstances—prevents a prisoner from timely filing, or when a prisoner actively pursues judicial remedies but files a deficient pleading during the statutory period." *Gibson*, 23 F.3d at 808 (internal citations omitted). Likewise, misconduct or "egregious behavior" by an attorney may warrant equitable tolling. *Holland v. Florida*, 560 U.S. 631, 651 (2010). However, "[s]imple excusable neglect is not sufficient." *Gibson*, 232 F.3d at 808 (citation omitted).

Finally, actual innocence can create an exception to the one-year time limitation. To qualify for the actual innocence exception, the prisoner "must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell* 547 U.S. 518, 536-37 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 327

(1995)). The prisoner must come forward with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324.

### Analysis

The KSC affirmed Petitioner's sentence in an opinion filed on July 26, 2018. Petitioner then had 90 days to file a petition for writ of certiorari with the United States Supreme Court. He did not do so, but within that 90-day period, on August 10, 2018, he filed a motion for post-conviction relief under K.S.A. 60-1507 in Sedgwick County District Court. Filing the 60-1507 motion statutorily tolled the federal statute of limitations for filing this federal habeas matter. *See* 28 U.S.C. § 2244(d)(2).

The state district court denied the motion as well as a motion to withdraw plea Petitioner had filed, and the KSC considered both denials in one appeal. On June 12, 2020, the KSC issued its opinion affirming the denials. *See Adams*, 311 Kan. at 569. The following day, the one-year federal habeas limitation period began to run and it expired one year later, on June 13, 2021. But Petitioner did not file his petition in this matter until August 4, 2021. Thus, as Respondent asserts in the motion to dismiss, this matter appears untimely. (See Doc. 13, p. 5.)

In the portion of his petition addressing timeliness, Petitioner stated:

> I filed to all lower Courts first as I was advised to. Final denial to Supreme Court was 7/20/20. I immediately filed to court in Sedgwick Co. District Court within 10 days of receiving decision. After not hearing anything for several months I wrote to them. Filed to wrong count [and] they directed me to another court [and]

> it wasn't correct either. So my initial filing never got processed. I have included cop[ies] of letters/motions to other courts with postmarks showing those attempts still would have been before 1 year timeline. 7-13-21 is postmark on earliest letter to court [and] deadline would have been 7-20-21.

(Doc. 1, p. 13.) Petitioner attached multiple documents to his petition in support of his timeliness argument.[1]

In his response to the motion to dismiss, Petitioner argues first that his claims have merit. (Doc. 16.) But the potential for success in a § 2254 does not factor into the timeliness analysis. Liberally construed, Petitioner's remaining arguments appear to request equitable tolling. As noted above, equitable tolling applies only "when an inmate diligently pursues his claims and demonstrates that the failure to timely file was caused by extraordinary circumstances beyond his control." *Gibson*, 232 F.3d at 808.

First, Petitioner asserts that he was not told what steps he needed to take after the conclusion of his case in the KSC. (Doc. 17, p. 1.) He asked other inmates and the prison law library what to do, but the information he received was incorrect. *Id.* For example, he was told that the year began the day the mandate was filed and he was told to file in the court in which he was originally

---

[1] Attached to the petition were the following documents:  (1) a letter addressed to "Clerk, U.S. Federal Court" dated July 26 (no year); (2) a motion for habeas corpus, also dated July 26 (no year); (3) an envelope addressed to the "Clerk of District Court (Federal)" with the street address of the Sedgwick County District Court, postmarked July 13, 2021; (4) a letter to "Clerk of Court" dated June 28 (no year but file-stamped in 2021) inquiring about the status of his "final appeal to Federal Courts"; (5) a notice from the Clerk of the Sedgwick County District Court dated July 2, 2021, directing Petitioner to "write to the Federal Courts for information about your Appeal," but also directing him to "correct, complete, and return the information indicated above to" the Sedgwick County District Court; and (6) an envelope addressed to the Clerk of the U.S. District Court with the mailing address for the Wichita Courthouse, postmarked July 27, 2021. (Doc. 1-1.)

charged.[2] *Id.* But "[i]t is well-established that ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing." *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000). Thus, Petitioner's reliance on incorrect information and his ignorance of the law does not present extraordinary circumstances that justify equitable tolling.

Petitioner also states that he has been in protective custody and on total lockdown in a cell the entire relevant time. (Doc. 17, p. 1.) He does not specifically explain, however, how being in lockdown or protective custody warrants equitable tolling. *See Donald v. Pruitt*, 853 Fed. Appx. 230, 234 (10th Cir. 2021) ("[Petitioner] is not entitled to equitable tolling based on his allegedly limited access to the law library in the wake of COVID-19."); *Phares v. Jones*, 470 F. Appx. 718, 719 (10th Cir. 2012) ("The mere fact of a prison lockdown . . . does not qualify as extraordinary absent some additional showing that the circumstances prevented him from timely filing his habeas petition."). And at some point, at least, Petitioner was able to request and receive materials from the prison law library; he refers in his response to "case decisions I got from [the] law library." (Doc. 17, p. 3.) Thus, Petitioner's protective custody status is not the type of extraordinary circumstance that warrants equitable tolling.

Petitioner next argues that his severe mental health disorders caused at least some of the delay in filing. (Doc. 17, p. 2-3.) He asserts that he suffers from schizoaffective disorder, psychosis, schizophrenia, bipolar disorder. (Doc. 16, p. 4; Doc. 17, p. 3.)

---

[2] The Court notes that Petitioner asserts the mandate he received was file-stamped July 20, 2020. (Doc. 17, p. 1.) Even if the one-year federal habeas limitation period were calculated from that date—which it is not—the petition still would be untimely, as Petitioner did not file it until August 4, 2021.

Petitioner further alleges that on or around August 1, 2020, he became "100% non-compliant with all meds and communications," and he details some of the other effects of his mental health issues, including mania, insomnia, delusions, and hearing voices. (Doc. 17, p. 2.) He asks the Court to subpoena and review mental health records kept by the Iowa Department of Corrections from 2007 to 2016.[3] *Id.* at 3.

The Court is sympathetic to Petitioner's apparently severe mental health issues. However, "'[e]quitable tolling of a limitations period based on mental incapacity is warranted only in exceptional circumstances that may include an adjudication of incompetence, institutionalization for mental incapacity, or evidence that the individual is not capable of pursuing his own claim because of mental incapacity.'" *Alvarado v.* Smith, 713 Fed. Appx. 739, 742 (10th Cir. 2017) (quoting *Reupert v. Workman*, 45 Fed. Appx. 852, 854 (10th Cir. 2002)). In order to establish grounds for equitable tolling based on incapacity, a prisoner "needs to show that he had been institutionalized for mental incapacity, judged incompetent, or not capable of pursuing his own claim during the period in which he needed to file his application." *Alvarado*, 713 Fed. Appx. at 742.

Petitioner has detailed a long history of suffering with severe mental health disorders. He has not, however, alleged the sort of extraordinary circumstances that justify equitable tolling of the statute of limitations based on mental incapacity. Petitioner does

---

[3] Although the Iowa Department of Corrections records Petitioner asks this Court to subpoena and review could establish Petitioner's history of mental illness, they would not show Petitioner's mental health status during the time period with which the Court is currently concerned, which is the time during which the federal habeas limitation period ran: June 13, 2020 to June 13, 2021.

not assert that he was institutionalized or judged incompetent during the time the federal habeas statute of limitations was running—June 13, 2020 to June 13, 2021. Nor has he alleged facts that, if taken as true, show he was incapable of pursuing his federal habeas claims between June 13, 2020 and June 13, 2021. Petitioner acknowledges that he attempted to pursue these claims—he inquired of other inmates and the law library and he asserts that he diligently pursued federal habeas relief during this time period. (Doc. 17, p. 2.) Thus, Petitioner has not established that he is entitled to equitable tolling because of his mental incapacity.

Equitable tolling also may be warranted "when a prisoner actively pursues judicial remedies but files a deficient pleading during the statutory period." *See Gibson*, 23 F.3d at 808 (internal citations omitted). Petitioner alleges that, following incorrect advice, he initially filed "notice" in state district court and "attempted to file [his] habeas corpus with [the] first couple of weeks" after receiving the KSC's mandate. (Doc. 17, p. 1-2.) As noted above, Petitioner similarly asserted in his petition that he had filed federal habeas petitions "several times since August 2020" in attempts to properly file. (Doc. 1, p. 12.) As Petitioner acknowledged, however, the "postmark on [the] earliest letter" attached to the petition in support of this assertion is July 13, 2021. *Id.*; (Doc. 1-1, p. 4). Another of the letters is file-stamped July 14, 2021. (Doc. 1-1, p. 5.) Thus, the documents Petitioner has submitted to this Court do not establish that he filed a petition for federal habeas relief in state court within the "first couple weeks" after receiving the KSC's mandate.

Petitioner's claim that he actively pursued judicial remedies during the relevant time period also is unpersuasive. In the petition, Petitioner acknowledges that after filing for relief in the state district court, he waited to inquire further until "[a]fter not hearing anything for several months." (Doc. 1, p. 13.) The Court appreciates that Petitioner is aware that court proceedings take time and do not always proceed quickly. However, it was Petitioner's responsibility to ensure that he filed his documents in the correct court. In light of the delay of "several months" before Petitioner sought to confirm that he had indeed done so, the Court cannot conclude that he was actively and diligently pursuing federal habeas relief during the relevant time period.

In short, the petition in this matter was not filed within the one-year statute of limitations. Petitioner has not shown that he is entitled to equitable tolling of the statute of limitations. Accordingly, the matter must be dismissed as time-barred. The Court will therefore grant Respondent's motion to dismiss (Doc. 13).

**Pending Motions**

Also pending before the Court are Petitioner's motion to amend petition and appoint counsel (Doc. 15) and a separate motion to appoint counsel (Doc. 18). The request for appointment of counsel will be denied for the reasons explained at the beginning of this order. In addition, Petitioner seeks to amend his petition to add a claim that his appellate counsel was ineffective. (Doc. 15.) Because the proposed amendment would not affect the Court's conclusion that this matter must be dismissed because it was untimely filed, the motion to amend will be denied.

**Conclusion**

For the reasons set forth above, Petitioner's motion for appointment of counsel is denied. The Court also concludes that the present petition is time-barred under 28 U.S.C. § 2244(d) and that Petitioner has not shown the type of circumstances that justify equitable tolling of the statute of limitations. The Court will therefore dismiss this matter as untimely. Because Petitioner's proposed amendment to the petition would not affect, much less cure, the failure to timely file, the motion to amend the petition is also denied.

Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability (COA) upon entering a final adverse order. A COA may issue only if the petitioner made a substantial showing of the denial of a constitutional rights. 28 U.S.C. § 2253(c)(2). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The failure to satisfy either prong requires the denial of a COA. *Id.* at 485.

The Court concludes that its procedural ruling in this matter is not subject to debate among jurists of reason. Therefore, the Court declines to issue a certificate of appealability.

**IT IS THEREFORE ORDERED** that Petitioner's motion to amend (Doc.

15) and motion to appoint counsel (Doc. 18) are **denied**. Respondent's motion to dismiss (Doc. 13) is **granted**. This matter is **dismissed** as time-barred. No certificate of appealability will issue.

**IT IS SO ORDERED.**

DATED:  This 12th day of April, 2022, at Topeka, Kansas.


S/ Sam A. Crow

SAM A. CROW
U.S. Senior District Judge